IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

EQUATOR CORP.                    CASE NO. 06-30414-H2-7
                                  (CHAPTER 7)

        DEBTOR
_____
_

KENNETH R. HAVIS
CHAPTER 7 TRUSTEE,

        PLAINTIFF

VS.                              ADVERSARY NO. 06-3581

STEVEN BARRY FRANKOFF
SUSAN NORMAN
        DEFENDANT(S)


MOTION FOR SUMMARY JUDGMENT

        Comes now, Defendant Steven Barry Frankoff,  by and through

his counsel, and files this a consolidated motion for Summary

Judgement.


SUMMARY JUDGMENT STANDARD


        Summary Judgment is proper when the pleadings , discovery,

products and information on file as well as the affidavits show that there

is no genuine issue of material fact, and the movant is entitled to the

judgment as a matter of law.FRCP 56C, Celotex vs. Catrett, 477 U.S. 317, 326, 106 S.Ct.2548, 2554 (1986);  Baton Rouge Oil & Chem. Workers Un. Vs. ExonMobil Corp. 289 F.3rd 373, 375, (5th Cir. 2002)

Summary Judgment is particularly appropriate when the question to be decided is an issue of law. Flath v. Garrison Pub. Sch.Dist. 82 F3rd 244, 246 (8th cir. 1996), and in the interpretation of unambiguous contracts. **<u>See</u>** Hanson vs. McCaw Cellular Comm Inc: 77 F3d  663, 667, (2nd Cir 1996) United Bd. Of Carpenters Local 42 – L vs. United Bd of Carpenters 73 F3d 958, 961 (9th cir. 1996), as well as the legal sufficiency of documents. Lund vs Albrecht 936 F.2d 459, 463, (9th Cir 1991).

## FACTUAL HISTORY

Mr Frankoff  was Equator's corporate counsel for  many years.  Mr Frankoff,  had also represented Mr Vir on numerous occasions, both individually, and as president of Equator. There had been no conflict between these entities Therefore, Mr. Frankoff, under current state bar interpretations and mandates, had an attorney client relationship,with Mr. Vir as well as Equator,.

## THE CONTINGENCY FEE  AGREEMENT AND SUBSEQUENT SETTLEMENT

On May 1, 2005, Equator and Mr. Frankoff, entered into a contingency fee agreement, outlining the terms and conditions of his

employment regarding a specific matter, which was apart and separate from corporate representation. The contingency fee agreement concerning the litigation between Equator and Melroni,  was signed by the attorney and corporate client and initialed on all pages by the principal operating officer of Equator, acting in his corporate capacity, and signed on the last page. (See Exhibit 1 contingency fee agreement, herein attached and incorporated by reference) The initials on each page are those of Mr. Vir and the signature is his customary way of signing in his corporate capacity.

This agreement in unambiguous language defines the method of payment for Mr. Frankoff's services and representation in Equator vs. Melroni a/ka/ Indesit and is apart and separate from any other representation of Equator. Suit was filed on 5/6/05. On August 16, 2005, a settlement was reached in the case. (See settlement agreement exhibit  2,  attached and incorporated by reference). The settlement consisted  of  non cash benefits including cancellation of some orders and spare parts,  and a cash settlement including forgiveness of debt, all of which benefited Equator within the meaning of the contingency agreement.

The fee agreement is a standard form that under Texas and Federal Law results in a present tense transfer of a future right. (See supporting authorities cited in memorandum of points and  authorities filed in the proceeding which are  incorporated into this pleading by reference,) The language of the assignment clause is as follows:

"The client hereby grants the attorney a lien, and

assigns an interest…This lien/assignment shall apply and be effective upon any monies which are rendered in connection with this cause of action or any related matter…settlement…"

It should be  noted that this provision is for both fixing of a lien  and an effective assignment of ownership under the specific terms of this provision of the agreement and  Paragraph 11 of the agreement. The Texas courts hold that this clause creates an equitable lien which is necessary in tort cases because a tort cannot be assigned during pendency of the case, and an assignment of the proceeds when they come into existence. See Coen v. Stout, 245 S.W. 2d 971.

The agreement  contains an integration clause (clause 14 and 18), and a clause stating the amount due to the attorney in percentage terms. It also provides that  when there is a structured settlement the attorney may defer  payment of the fee.

Under the terms of the settlement agreement and the specific terms of the contingent fee contract all proceeds of the settlement (cash and / non cash) were transferred to the defendant not as a lien, but by ownership at the time the time the fund was identified and/or created. (See, e.g., Barnes vs. Alexander 232 U.S. 117, 24 S.Ct. 276, 58 L.Ed. 530 (1913) Also Sereboff vs. Mid Alantic Medical Services, on writ of Certiori Case # 05 0260, Missouri Pacific RR v. 415 F2d 415, page 439. (supra).

The settlement between Equator and Melroni became effective and operative on 8/16/05.The first payment was made on8/16/05. (See

exhibit 3, 8/16/05 check herein attached and incorporated by reference.) This check was issued to Equator and Mr. Frankoff jointly and was endorsed by Mr Frankoff, and Equator . The parties also acknowledged a letter confirming receipt of these funds (see exhibit 3, 8/16/05 letter).

These funds were totally dispersed to creditors of Equator, per the instructions of Equator. Mr. Frankoff exercised his right to defer his compensation until the 2nd payment, as was specifically provided for in the contingency fee agreement.

The second payment of $350,000 was paid on 1/17/06 and was to belong in it's entirety to Mr Frankoff, as provided in the contingency fee contract. (See exhibit 4, attached and incorporated by reference: front and back of check, and exhibit 5, letter of acceptance). Equator and Mr. Frankoff jointly endorsed the check and signed the letter of acceptance. These proceeds were endorsed by the payees and deposited into the IOLTA trust account of Mr. Frankoff.

The total value of these payments was as of 1/17/06, $726,000.00. There were additional cash equivalent benefits in the nature of forgiveness of debt in the amount of $418,000.00. The non cash benefits consisted of replacement parts, and forgiveness of any liability for 10,500 machines, which were ordered but not shipped.

The parts were supplied to Equator, as agreed under the settlement agreement and Equator was thereby able to fix damaged machines and replace defective parts for existing customers. The debt

was forgiven. Equator kept the machines while having the benefit of non payment and Equator  was released from any liability for the unshipped machines.

### Interpretation of the Written Agreement

Under Texas law and federal cases applying Texas law the issue of ownership is solely determined by the written agreement. The  intent of the parties controls which in this case would be determined by examining exclusively the unambiguous terms of the written contingency fee contract between Mr. Frankoff and Equator,  In re Ashely, 41 B.R. 67 (E.D. Mich.1984)

In this case  the specific terms of the assignment clause create an unambiguous present tense assignment  to  all disputed  proceeds operative on May 1, 2005.  This assignment language, refers to 40% of any benefit,  direct and/or indirect, received by Equator. Once the fund was established on 8/16/05, the lien and assignment ripened into  ownership of the funds. (See Barnes v. Alexander, and Sereboff vs. Mid Alantic Medical Services, supra)

> "…The client hereby grants the attorneys a lien and assigns
> an interest…" See clause 11 of the fee agreement

Any allegation to the contrary runs afoul of the language of the contract, which outlines the percentage due to Mr. Frankoff ,and the source of the payments.

The operative clauses read as follows;

" …40% of all sums recovered …" See clause 4.b:

"The attorney retains the sole right to take the
attorney fee [at] the time of settlement or in deferred payments; regardless of the settlement or in deferred payments regardless of the manner in which the client's recovery is paid… in the event  a structured settlement is negotiated the attorney fee may be paid in cash or in deffered payment of the attorney fee and expense as contracted herein…"  See clause 9.

Based upon the above language, to establish ownership of the fund, Mr. Frankoff needs only to present evidence of the existence of proceeds of settlement which is shown by the checks issued and receipts which are undisputed  proof that the fund came into existence on 8/16/05.

Any reliance the trustee or his counsel might place upon any events occurring  after that date are inadmissible under  Texas and Federal law and the integration clause in the contingency fee agreement. See clauses 14 and 18 of the agreement. Clause 18 reads in part as follows;

> "This agreement contains and/constitutes all of the agreements
> obligations and terms among …parties and may not be amended
> altered and/or changed except by a written instrument, signed
> and executed by all parties…"

The cases cited in the memorandum of points and authorities and
elsewhere in this motion support the conclusion that not only were the
funds conveyed to Mr. Frankoff, but  Mr. Frankoff could follow the
funds into any hands in which they fell,  Barnes vs. Alexander, supra,
After 8/16/05 and certainly no later than 1/17/06 when he took
possession of the funds his right to these funds remained intact no
matter what he did with them.

Movant submits that the only summary judgment evidence
required to render a judgment to this effect is the undisputed
documentary evidence presented by both parties. Therefore, Movant is
not presenting facts about occurrences after 8/16/05 and 1/17/06
because they are not material or necessary summary judgment
evidence. Movant, however, will respond to any reliance by the Plaintiff
on events after these dates in his motion for summary judgment.

Argument and Authorities

Movant contends that both an equitable lien and assignment are
established in the agreement, and under the specific terms of the
contract and applicable law ripened into ownership when the
settlement fund came into existence. Assuming that the remainder of
the funds due to him would be held by the Debtor, he and his
Bankruptcy counsel planned to file a lift of stay and/or turnover of any

of his funds in the hands of the trustee as he has now done in his counterclaim which is made as owner of the funds and not as a secured creditor. It is undisputed that Mr. Frankoff  never received any formal notice of these proceedings except when  this adversary proceeding arose. He has never been listed as a creditor, or a party to a contract with the Debtor, or in any other capacity in the Chapter 11 or Chapter 7 proceedings. Even if he was a lien holder and not owner of the funds, he would have a superior lien in the funds held by the Trustee and could move for abandonment or satisfaction of his lien by the Trustee.

Mr. Frankoff was never and has to date never been listed as a creditor and/or lien holder of any type  in any  bankruptcy, nor has he been given any notice and/or status under any filings by Equator. This omission imparts itself to both the former and current attorney and to both the former and current trustee and/or debtor in possession.

The documentary evidence and affidavits indicate that the source of all the funds claimed by the Trustee to be property of the estate without any explanation of how they are property of the estate under the Bankruptcy Code, is Mr. Frankoff's fee. This being the case, the funds that have been redeemed by the Trustee are either owned by Mr. Frankoff ,as contended in this motion or subject to a superior lien on his part that cannot be avoided under 11 U.S.C. Sec 544 or Sec. 547. (See explanation in In Re: Willis, copy attached.).

Based upon the verified documents on the attached list and the case law in Movant's Points and Authorities, already on file with the court,  the contested funds received by Mr. Frankoff and Ms. Norman,

as well as the funds redeemed by the court and the trustee from Mr Blanco and Mr Riga, were never property of the estate. Movant, and by implication Ms. Norman, contend, and all of the uncontested facts and cited case law support movant's position that the funds were and the redeemed funds are.the sole and exclusive property of Defendant Frankoff, to disperse and dispose of unilaterally, as he sees fit.

The Court has noted that the issues in this case should be resolved in the context of Texas State Law. Although federal law is also operative and instructive, it is the body of the law of Texas viewed in the context of the facts presented before this court that have a major impact on the issue of ownership.

TheTrustee has not addressed or ,explained how Mr. Frankoff's fees relate legally to the estate. If these funds are "somehow" part of the estate, then Mr. Frankoff's contingency fee contract must also have some legal relationship to the estate but none has been offered to date.

.

Federal and B.R cases:

Barnes vs. Alexander 232 U.S. 117, 24 S.Ct 276, 58 L.Ed 530 (1913), presents to the rational upon which this motion rests. In the opinion written by Justice Holmes the Court says:

It is not necessary to consider whether the lien attached ...
before the fund was received ... it is enough that it attached
no later then that moment…


Even if their lien was only inchoate when the suit was begun...
they had a right to protect their interest, and of course were
not deprived of it by the plaintiff's reaching the result that
they also desired. Having a a lien upon the fund as soon as it
was   identified they could follow it... page 122, and 123.


Most recently in Sereboff vs. Mid Alantic Medical Services, on

writ of Certioriari Case nu: 05-260, Chief Justice Roberts returns to  the

interpretation of a contingency fee contract. Essentially affirming the

rationale in the Barnes case, the Court says:

Based on the familiar rule of equity that a contract
to convey a specific object even before it is acquired
will make the contractor a trustee as soon as he gets
title to the thing id. at (page 121 of Barnes), the Court
found that Barnes undertakingcreate(d) a lien upon the
client ibid., which the other attorneys
could  follow...into (Barnes) hands as soon as
the fund was identified id. at 123"....

I

Pascual vs. Commissioner of IRS, 220 F.3rd 353, page

359-361, (see anticipatory assignment). There is a contest between

the IRS, and a taxpayer, not unlike the contest between the trustee and

Mr. Frankoff in this case. The issue presented was whether the

contingency fee paid to the attorney must first be declared by the

taxpayer as income, and thereby be recognized as first the taxpayer's income and then a deduction, or in the alternative whether this income should be viewed as non taxable, because of the nature of the transfer. The decision holds that this fund need not be considered income.

This case is presented for the following reasons: 1/ the case arose initially out of Texas contingency fee contract, and 2/ the court here struggles with a statutory scheme, IRS code, in the same fashion this court must consider the Bankruptcy code.

Eakin d/b/a Cyrpress Helipcoper Company vs. United Techology Corporation 998 F. Supp 1422 (1988) page  1431. The Court says:

> What this boils down to in the end are basic principles of contract law. Was there an offer and acceptance supported by consideration? ...What matters.... is that a contract was formed...page 1431.

Missouri Pacific RR vs. Austin 415 F.2nd 415, page 419 (assignment date), In this case the court directly addresses the principle of assignment and ownership in the context of a personal service contract, since the provider of services was not an attorney, this case does not directly address attorney client contingency fees, but it does give an  insight as to how and when these personal representative contracts can change character and name, when they become fully completed  and operative. See page 420

.his, (the representatives)  work was finished... More then that , his work was well and successfully done......When the award was formally issued... the prior agreement.. ripened into an equitable assignment....the situation is comparable to that of an attorney=s contingent fee contract which changes from an executory contract  to an equitable interest upon performance...  an executory contract   to an equitable assignment upon performance…

Cappel, vs.  Adams 434 F.2nd 1278, US. Court of Appeals 5th Cir. The Courts says that as long as the terms of the contract are reasonable, when the attorney recovers a fund under the contract, as has been done here, he shall be compensated out of the fund he creates. No party to this action has even suggested that the fund created was not the result of the efforts of Defendant Frankoff.

Tonry vs. Herbert 724, F.2nd 467 ( 5th Cir 1984) 1970 In this case the Court notes that the specific nature of attorney client contract is a personal service contract, and that a trustee operating under sec: 365(a) may not assume or reject these types of personal service contracts. Also the court defines an executory contract as one upon which performance remains  due. If one accepts this 5th circuit opinion then the contract in the instant case is beyond the reach of the trustee both as a personal service contract and as fully completed contract.

Bankruptcy Rulings

In In Re Willis (E.D Texas 1992) 143 B.R. 428, This case is distinguishable on the facts since the attorney never presented a fee contract or settlement agreement, and the Court found that he had an executory contract, but the issues treated and the law cited are relevant to this case. The Court discusses the premise of the common trust fund theory, and the nature of contingency fee contracts in the context of bankruptcy matters,

> "In Texas, it is clear that had the suit been … finalized
> through settlement [ as it has in the the now before the
>  court]…[A] recovered   judgment gives an
> attorney retained on a contingency fee basis an interest
> in the cause of action in the nature of an equitable lien…
> an attorney's lien is paramount to the rights of the parties…
> and is superior to all other liens on money or property…
> subsequent  in point in time…by implication, this could
> have the effect of defeating the trustee's 11 U.S.C.A.
> 544...avoidance powers…"

The Willis Court found that the fund created  was subject to the "common trust fund doctrine" which the Court describes as follow:

> "the common trust fund doctrine recognizes
> that one who accomplishes the creation of a fund for
> the benefit of another is entitled to reimbursement
> therefrom…"

The Willis Court makes the following comment that relates to a possible exercise of this Court's  powers under 11 U.S.C. Sec 105.

> "In fact, it is apparent to this [Willis] court, as it may

> be [to this court] that the Trustee and Debtor are
> attempting  to maximize the estate…at the expense
> of counsel's contracted for fee…such a result is
> inequitable and will not be condoned…"

In Re Ashley  (E.D Michigan N.D.) 41 B.R. 67 (1984).

> " An attorney's charging  lien is " an equitable right to have the
> the fees and the costs due to him for services in a suit
> secured to him out of the judgment or recovery of a particular
> suit…"

The Ashley court considers the issue under Michigan law, but

many of the same principles apply in Texas

> [As in Texas], "Under Michigan law no specific procedure
>  is devised for perfection of the lien. Since there was
>  [and is in Texas] no further act necessary to perfect  this lien,
> it is invulnerable to attack by the trustee under sec B.K section
> 544 and B.K. code section 547…"

> In re: Jim-O-Lette d/b/a Hardee=s Restaurant (N.D. Texas 1992)

140 B.R. 874, pages 876 – 877. This is a Texas case, in which a  court

closer to home describes and defines a charging lien.

> The English courts recognized a charging lien as a means of
> protecting attorneys against dishonest clients, who, utilizing
> the services of an attorney to establish and enable to enforce
> their claims ...sought to evade payment for the services which
> enabled them to recover...attorneys lien claimed in this case,
> ... is an equitable right of an attorney to have the fees and costs
>   due to him...

Although all of the cases cited above are varied in fact pattern, and circumstance, and even the name of the rights and sometimes the remedy differs in different contexts, they are consistant as to the following principles of law:

A contingency fee agreement is an assignment of a right, a present tense transfer of a future property right, a res, and the holder of the assignment is the true and complete owner, once the funds have been identified. Many of these cases do speak in terms of a lien and lienholder rights, but these rights are in the nature of an equitable present  tense transfer of ownership upon performance, and establishment of a fund from to which the lien holder has  present ownership rights.

In the factual pattern presented in the instant case, a fully completed contract and a fully funded property, res., the cases indicate that ownership has passed to the attorney, and the contract is no longer executory in nature, nor are the identified and distributed proceeds property of a subsequently created Bankruptcy estate.

## TEXAS CONTRACT LAW

The Court has noted that the issues in this case should be resolved in the context of Texas State Law. Although federal law is also operative

and instructive, it is the body of the law of Texas viewed in the context of the facts presented before this court that have a major impact on the issue of ownership

 While the cases cited below vary in fact pattern, they all hold that the usual rules of contract law apply to attorney fee contracts. Howell vs. Kelly 534 SW 2nd 737, 739. They all hold that the courts in Texas will generally not re draft the the terms of the contract. Bailey,Vaught, Robertson & Co. v.s. Remington Inves. Inc. 888 SW 2d 860, 865 (Tx App. Dallas 1994

no writ).  Thomas  861, SW 2d at page 62, Stern 846 SW 2d at page 944, Berman vs. Rilfe 644 SW 2d 574, 576, Tx. App. Fort Worth, writ ref'd and Parker 197 SW 2d 849.

 Republic National Life Insurance vs. Spillers 366 SW 2d, 92, see page 94, adopting the Ohio vs Smith holding (supra). ;

> Where...an unambiguous writing is being construed, this court
> will give effect to the intention of the parties as expressed...in the
> writing.

The court further adopts the Ohio Oil (supra) standard:

> In the usual case the instrument alone will be deemed to
> express the intention of the parties, for it is the objective
> and not the subjective intent that controls.

Citizen's Nat. Bank vs. Texas & R.Ry Co, , 150 SW 2nd 1003, 1006, (Supreme court of Texas 1941) sets out  the general rules of contract construction and interpretation in Texas.

> ...Rules of construction as applied to contracts are for the purpose of enabling the court to ascertain from the contract itself, that is the language used, the manner and extent to which the parties intented to be bound. Courts do not resort to arbitary rules of construction where the intention of the parties is clearly expressed in an unambiguous manner. Magnolia Petroleum Co. Vs Connelle. Tx Com App., 11 SW 2d 158

> The cardinal rule of construction as applied to all contracts is to ascertain the intention of the parties as expressed in the language used in the instrument itself. In this connection, it is the intention and purpose of the contracting parties, as disclosed in the instrument, which should control. 10 Tex Juris. P 272, sec 159

> A contract must be construed in accordance with its language. Its terms when free from ambiguity and not in conflict with the law, establish the rights of the parties 10 Tex. Juris p. 279 sec 163...@

Ohio Oil vs. Smith, 365 SW 2nd 621 (1963), already cited, goes on  further, while dealing with indemnity issues arising from contracts holds as follows:

Strict construction. page 627.

> In our opinion the intent of the parties as expressed in unambiguous ....controls...in cases where the intent is clear that such result was to be had...

In Polybutyence Plumbing et al  vs. Heschest et al. 23 SW 3rd 428

page 436, the court initially holds, as all the courts of Texas hold that

> A...As a general rule, a court has not authority to determine what
> fee a litigant should pay to his...own atttorney... that being
> a matter of contract... Thomas vs. Anderson 861 SW 2d 58, 62
> (Tex App. El Paso 1993 no writ)...When the language in the
> attorney fee contract is plain and unambiguous it must be
> enforced as written. Stern v. Wonzer 846 SW 2d 939,944
> (Tex App. Houston 1st Dist. 1993 no writ.) If an attorney
> lien fee contract was valid when made and it was made by
> and between mentally competent persons, it is to be enforced
> without review of reasonableness of attorney's fees so
> fixed. Parker vs. Boyles 197 SW 2nd 842, 849,(Tex. App.
> Galveston 1946, writ ref=d n.r.e.)

Tarrant County Hospital Dristrict vs. Jones 664 SW 2nd 191. Is an

important case because is goes directly to the issue of competitive

liens. It holds that the attorney lien trumps a hospital lien, it also

explains the nature of the attorney lien, and how it is paramount to all

other liens.

.

In Coen v.s Stout 245 SW 2nd 971,the court initially considers the

executory nature of the contingency fee contract between attorney and

client, and after a review of the relevant facts makes it clear that once

the work was performed the attorney's right attached.

Turley vs. French , 2-01-080 CV 2003 Texas 0000888. Decided

in 2004, the Court held that once the performance is complete the

contract is no longer executory in nature. See Fn 27, citing Lee v.

Cherry 812 SW 2d 361, 363, Texas App.  Houston (14th Dist) 1997 .

Also B.L. Nelson & Associates v. City of Argyle 535 SW 2nd 906, 906

(Tx Civ. App. Fort Worth 1976 - writ ref'd n.re.). This case also makes

an interesting point as to the conduct of attorneys in the context of

contingency fees, The attorney must not do anything that would injure

the case, and/or the client, which is prohibited by Tx Disciplnary Rule

Prof conduct 1.04(a). It was with this rule in mind, and in accordance

with its mandate that Mr. Frankoff deferred his fee,  until the 2nd

payment was made under the settlement, and then acquiesced to the

demand of Mr Vir that his attorney Mr. Riga hold the as a stakeholder

against Vir's spurious claim to the  funds.

        This deferral would have no effect upon the contract, and or its

enforcement under state law. Stegman vs. Chavers, 704 SW 2nd 793,

(Dist Ct. Dallas County (1985) cites Garcia v. Karam 154 Tex. 240, 276

SW 2d 244, 257, (1955)

> (T)he subject matter of the contract has not been changed, but
> only method of performing it, because the modification did
> not constitute a change in character or value of consideration...
> We hold the change of one incidental condition of relating
> payment of the agreed sum...the written contract is not rendered
> invalid...

In Thomas vs. Wright 443 SW 2nd 219 Civ. App. 1st Dist.  1968, on pages 228 the court makes it clear that A the parties dealing at arms length have a wide discretion as to the terms of the contracts...they may wish to enter.

Thomas vs. Findlater, 156 SW 301 (Civ App of Tx Austin 1913) explains how liens apply, and states  that once the funds arise, the holder  has an immediate and absolute right to the amount due him. u The lien language referred to in that case as in many other of these cases refers in actuality to a res,  a present tense transfer, taking the form of an immediate assignment of a future fund. Once the fund arises the lien is paramount to all others. ( In Re Willis, supra, and cases cited therein).

Steubner Reality vs.  Cravens Road 88 LTD. 817 SW 2nd 160, Civ. App. Tx 14th Dist. 1991) makes the point in equity, that once a benefit is conferred upon a party to a contract, that party is estopped from denying the contract. The Trustee, who is in the shoes of the debtor, has accepted the benefits of the contract that being its share of the proceeds from Equator vs. Indesit and is now taking an inconsistent position to the detriment of the other party to the contract,

Enochs vs Brown 872 SW 2nd 312 (Civ. App. Austin Tx 1994)

This case provides an insight into several aspects of contract

construction and enforcement. Once the complaining party accepts the

benefit quasi estoppel forbids that same party from denying the terms

of the contract, Even a minor defect in a contingency contract, failure to

sign by the attorney, will not defeat the effective and binding nature of

the contract. Only if  the contract is ambiguous will the court look

outside the contract. This decision is consistent with others cited by this

defendant in an effort to show that the instant case is suitable for

resolution by summary judgment.

Stern vs. Wonzer 846 SW 2d Wonzer (Tex App. 1993)

Stern outlines the scope of contract interpretation, it clearly holds as

follows:

> In interpreting an attorney=s contingent fee contract we
> apply the general rules of contract law. See Howell vs.
> Kelly 534 SW 2nd 737, 739, (Tex. App. Houston 1st Dist 19776
>  no writ). ...Where the intention of the parties is clearly and
> unambiguously stated in the contract, a court gives effect to the
> intention of the parties as expressed in the contract Citizens Nat'l
> Bank v. Texas & P.Ry. 136 Tex 333, 150 SW 2nd 1003, 1006
> (1941); Wadsworth Properties v. ITT Employment & Training Sys.
> Inc. 816 SW 2nd 818, 822,( Tex App. Houston 1st Dist. 1982 writ
> ref=d n.r.e..When the language is plain and unambiguous, it
> must be enforced as written...

 Howell v.Kelly 534 SW 2nd 737, 740, (Tex. App. 1st dist.

1976) addresses the nature of the suit, and how the burden of evidence

impacts the decision.

> Once the plaintiff attorney has proven a contract to provide
> legal service...he has established a prima facie case for
> recovery...  Meade v. Rutledge 11 Tex 44 (1853),     Hassell v.
> Nutt 14 Tex 260 (1855) Hearne v. Garrett 49 Tx, 619 (1881)
> Beaument v J.H. Hamblen & Son 81 SW 2nd 24 Ark. 1935)@

> Cigna Corporation v. Spears 838 SW 2nd 561 (Tx App. 1992)

This case explains in detail both types of attorney client privilege and

how such privileges impacts all and any evidence in the context of un

restricted discovery. The Texas Rules follow closely the Federal Rules

in this area.

Based upon the above law and undisputed documentary evidence,

these defendants request that this motion for summary judgment be

granted on all issues under the complaint of the Trustee.

Wherefore, premises considered, Defendant requests the Court to:

>> Grant their motion for summary judgment on all

>> Issues related to the complaint of the Trustee

and for such other and further relief as the Court deems appropriate.


>> Respectfully submitted,

>> S/ Roger H. Broach

Roger H. Broach

TSB 03031000

P.O. Box 56143
Houston, Texas 77256
281-435-7699
r.broach@sbcglobal.net

ATTORNEY FOR DEFENDANT

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the _____ day of December 2006, he mailed a copy of the above pleading, U.S. Mail  first class mail, postage  prepaid, to:


David R. Jones
Porter & Hedges. L.L.P.
1000 Louisiana, 36th Floor
Houston, Texas 77002

s/Roger H. Broach

_____

_

Roger H. Broach