IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| EQUATOR CORP | § | CASE NO: 06-30414 |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| KENNETH R. HAVIS, CHAPTER 7 | § | |
| TRUSTEE | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3581 |
| | § | |
| SUSAN C. NORMAN | § | |
|     Defendant(s) | § | |

**MEMORANDUM OPINION
FINDINGS OF FACT AND CONCLUSIONS OF LAW
CONCERNING ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

    Plaintiff Trustee, Kenneth R. Havis, filed this adversary proceeding to recover an alleged unauthorized post-petition payment to Defendants.  Both Plaintiff and Defendants moved for summary judgment.  The Court finds that there is no genuine dispute of material fact and that judgment as a matter of law can be issued on some, but not all, issues.  Prior to the filing of the bankruptcy petition, Defendant Frankoff did not own the funds in question; Debtor had an interest in those funds, and the funds became property of the estate.  Therefore the trustee can avoid the transfer.  However, there is insufficient summary judgment evidence to address the Defendants' allegations that Defendants have a lien on the funds and that they have rights superior to the trustee with respect to some or all of the funds.  And there is insufficient summary judgment evidence and insufficient briefing concerning Plaintiff's claim for damages for violation of the automatic stay.  Therefore, partial summary judgment is granted in favor of Trustee by separate written judgment issued this date and the Court will issue a scheduling order for determination of the remaining issues.

**I.    JURISDICTION**

    This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code.  The United States District Court has jurisdiction under 28 U.S.C. § 1334(b) and (e).  By Order dated August 9, 1984, superseded by General Order 2005-6 on March 10, 2005, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district.  This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(F).  The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C.

157(b)(1). No party has objected to the exercise of core jurisdiction by the undersigned bankruptcy judge.

## II.     STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is warranted if a party establishes that there is no genuine dispute about any material fact and that the law entitles it to judgment. Fed. R. Civ. P. 56(c). Rule 56(c) mandates "the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 106 S.Ct. 2548, 2552 (1986). Fed. R. Civ. P. 56(c) is incorporated into the Federal Rules of Bankruptcy Procedure by rule 7056.

All justifiable inferences will be drawn in the nonmovant's favor, *see Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513 (1986), but conclusory affidavits will not suffice to create or negate a genuine issue of fact. *See Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986). Unless there is sufficient evidence to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511. Admissibility of evidence on a motion for summary judgment is subject to the standards and rules that govern evidence at trial. *See Rushing v. Kansas City Southern Railway Co.*, 185 F.3d 496 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1171 (2000).

Rule 56 of the Federal Rules of Civil Procedure provides:

> (c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> (e) ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for the trial.

## III.    FACTS

Prior to the commencement of this bankruptcy case, Steven Frankoff, attorney at law, and Equator Corporation ("Debtor"), signed an agreement for Frankoff to file a lawsuit for Debtor against Merloni.[1] The agreement provided for a contingency fee.

Atul Vir ("Vir") and Debtor are separate and distinct entities. Vir owned Debtor. Debtor

---

[1] Trustee Exhibit 1.

owned the cause of action against Merloni. Debtor was the party to the contingency fee agreement, not Vir.

On August 16, 2005, Debtor signed a settlement agreement with Merloni (the "Merloni Settlement").[2] Under that agreement, Equator received a total of $725,000, payable $375,000 immediately and an additional $350,000 on January 17, 2006. But the agreement also provided for Merloni to provide to Debtor certain parts for repairs to equipment and for Merloni to release Debtor from certain liability.

The contingency fee was 40%. Forty percent of $725,000 is $290,000. The contingency fee agreement does not clearly define whether the contingency fee also applies to non-cash payments, such as hard asset "parts" or release of liability.

The first payment was a check made payable jointly to Frankoff and Debtor.[3] The check was endorsed and was deposited in Frankoff's client account. Frankoff alleges that he and Vir agreed that Frankoff would take his fee out of the second payment. That agreement was not documented. Frankoff alleges that the $375,000 was disbursed to pay Debtor's debts.

On January 17, 2006, the second payment ($350,000) was made.[4] A dispute arose between Frankoff and Vir over Frankoff's fee. The entire fund was deposited into the IOLTA account of Peter Riga, Vir's counsel for the fee dispute.[5]

About February 3, 2007, "S. Soe, Individually" sued "Doe Corp." and "John Doe 1, Individually" in state court for breach of contract.[6] Plaintiff and Defendants in this adversary proceeding appear to concede that the real parties to this lawsuit were Frankoff, Vir, and Debtor; Frankoff's counsel argued in a hearing in this Court that the real names of the parties were not disclosed to avoid any publicity over the fact that Frankoff was suing a client. No summary judgment evidence was submitted in support of that allegation.

Two days after the state court lawsuit was filed, Equator filed its petition for relief under chapter 11 of the Bankruptcy Code commencing this bankruptcy case. By filing the petition, Equator became "Debtor".

Four days later, in state court, Debtor (designated as "Doe Corporation, a chapter 11 debtor") and "John Doe 1, non-debtor," filed an answer and plea in intervention in which:

> John Doe individually confesses to judgment in the amount of $262,500.00
> which he tenders unconditionally to Plaintiff in full release and satisfaction
> of all claims that were perfected by contract and lien, which acceptance
> extinguishes all claims against John Doe 1.

The Court notes a number of peculiarities:

---

[2] Trustee Exhibit 2.
[3] Trustee Exhibit 3.
[4] Trustee Exhibit 4.
[5] Trustee Exhibits 4, 5, and 6.
[6] Trustee Exhibits 7, 8 and 9.

1. Frankoff, Vir, and Debtor are not identified by the state court pleadings. One must take their word for the fact that Frankoff was "S. Soe Individually", that Vir was "John Doe 1 Individually", and that Debtor was "Doe Corp."
2. Forty percent of $725,000 is $290,000. Nevertheless, in the "confession of judgment" Frankoff is allegedly agreeing to accept $262,500.
3. Frankoff never signed the document to accept the payment in satisfaction of claims, but the document alleges that he has made the release.
4. Vir, individually, had no claim to the money. Yet it is Vir that is allegedly confessing judgment. The document does not even suggest that Debtor agrees to the settlement or to the disbursement of funds from Riga's account.

Riga disbursed $196,875 to Defendant Frankoff and $65,625 to Defendant Norman. Norman was Frankoff's attorney in the fee dispute. The two checks, added together, total $262,500. There is no written instrument by which Debtor agrees to the disbursement. This payment was not disclosed to the Bankruptcy Court and was not approved by the Bankruptcy Court.

Frankoff asserts that the money deposited in Riga's IOLTA account was never property of the estate because Frankoff had ownership of the funds, as his fee, prior to the time that the bankruptcy petition was filed. Frankoff asserts that since the money was never property of the estate, payment of the money to him was not a transfer that the trustee can avoid.

## IV.    ISSUES

A.   Unauthorized Post-Petition Transfer of Estate Property

Bankruptcy Code § 549 provides that a trustee may avoid any unauthorized post-petition transfer of property of the estate. The Trustee must prove (1) that a transfer occurred; (2) that the transfer occurred after the commencement of the case; (3) that the transfer was made without court authority; and (4) that the property transferred was property of the estate. 11 U.S.C. § 549.

   1.   Post-petition Transfer

Bankruptcy Code § 101(54) defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." Debtor filed its bankruptcy petition February 5, 2006. Money was disbursed from Riga's trust account by check to Defendants. Both checks were issued February 9, 2006, and were honored that day or the next, at least four days after the petition commencing this bankruptcy was filed. A transfer occurred and it was post-petition.

   2.   Court Authorization

Neither party contends that the Bankruptcy Court authorized the payment.

3.  Property of the Estate

The principal dispute between the parties is whether the transferred funds were property of the estate. The Bankruptcy Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). This includes an attorney's right to compensation pursuant to a contingency fee agreement. *Marre v. United States*, 117 F.3d 297, 307 (5th Cir. 1997). State law includes not only statutes passed by the state's legislature, but also the law as explained by the state's highest court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

There is no material issue of fact with respect to the following. The funds that were transferred to Frankoff and Norman originated from the Merloni Settlement, which was a settlement of a claim owned by Debtor. Prior to the commencement of the bankruptcy case, Frankoff, Debtor, and Vir recognized a dispute over entitlement to the funds and deposited the funds in Riga's trust account pending the resolution of the dispute. As of the date that the bankruptcy petition was filed, both Debtor and Frankoff made claim to the funds in Riga's trust account.

The Defendants assert that the funds were not property of the estate because they assert that the $262,500 belonged to Frankoff in full ownership. The document that they cite for ownership of the funds refers to both a lien and to an assignment. At hearing prior to the motions for summary judgment, the Court stressed the importance of clarifying these contentions and of providing legal authority for the contention that Frankoff owned the funds free of any interest of Debtor. The Court requested legal authority to support the ownership concept.

a. Assignment as Ownership

None of the cases cited in Defendants' memorandum is determinative. The cases use the terms interest, ownership and lien interchangeably. *Compare Missouri Pac. R. Co. v. Austin*, 292 F.2d 415 (5th Cir. 1961) ("The situation is comparable to that of an attorney's contingent fee which changes from an executory contract to an equitable interest upon performance of the engagement by the recovery of a judgment."); *Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679 (Tex. App. - Houston [14 Dist.] 2003) ("After judgment, attorneys who earn a contingency fee are equitable owners (not mere claimants) of their portion of the judgment."); *Sereboff v. Mid Alantic Medical Services*, 126 S.Ct. 1869 (2006) ("Based on the familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing, the Court found that Barnes' undertaking created a lien upon the portion of the recovery due to him from the client...").

Defendants rely on *Barnes v. Alexander*, 232 U.S. 117, 34 S.Ct. 276 (1914), for the proposition that their lien attached to the Merloni Settlement when the funds were received. Even accepting this as true, it lends no support to Frankoff's claim to ownership of the funds. First, *Barnes* upholds a lien, not ownership. Second, *Barnes* comes to the Supreme Court from the territories; this pre-*Erie* decision applies federal common law and is not controlling. Whatever interest a lien might vest in the Defendants, it is not to the exclusion of the interests of

the Debtor.  The same is true for *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679 (1990), and *Sereboff;* neither supports a theory of ownership that defeats the broad bankruptcy definition of property of the estate.  The existence of a lien against property does not exclude the property from the estate; the debtor has an interest in property and the property becomes property of the estate, subject to the lien.

*Srivastava v. C.I.R.*, 220 F.3d 353 (5th Cir. 2000), is not instructive in the case at hand. *Srivastava* analyzes whether an assignment is anticipatory (and therefore included in gross income), not whether assignment under a contingency fee divests the assignor of ownership. That Court held that regardless of whether the assignment was anticipatory, "the answer does not depend on the intricacies of an attorney's bundle of rights against the opposing party under the law of the governing state." *Id.* at 365.  Furthermore, even if the analysis in *Srivastava* were on point, it is overruled by *C.I.R. v. Banks*, 543 U.S. 426 (2005).  *Banks* rejects the idea of even a proper "assignment" as sufficient to prevent the recognition of a gain for determining the client's gross income because the client ultimately retains control and dominion over the claim.  "The attorney is an agent who is duty bound to act only in the interests of the principal, and so it is appropriate to treat the full amount of the recovery as income to the principal…. [T]he contingent-fee lawyer [is not] a joint owner of his client's claim in the legal sense any more than the commission salesman is a joint owner of his employer's accounts receivable." *Id.* at 436 (citations omitted).  "This rule applies whether or not the attorney-client contract or state law confers any special rights or protections on the attorney, so long as these protections do not alter the fundamental principal-agent character of the relationship."  *Id*. at 437.

By authority of the rules of professional responsibility applicable to Texas attorneys, Frankoff's interest could be no more than a security interest.

> (h) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
>
> (1) acquire a lien granted by law to secure the lawyer's fee or expenses; and
>
> (2) contract in a civil case with a client for a contingent fee that is permissible under Rule 1.04.

State Bar Rules, V.T.C.A., Government Code Title 2, Subtitle G App. A, Art. 10, § 9, Rules of Prof. Conduct, Rule 1.08(h), adopted by order of Oct. 17, 1989.

The Texas Supreme Court has stated:

> In Texas, as in most states, a lawyer may not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, other than a lien to secure payment of his fee and expenses, and a contingent fee allowed by law.

*Mallios v. Baker*, 11 S.W.3d 157, 169 (Tex. 2000) (Hecht, J., concurring). Regardless of what Defendants claim, the contingent fee agreement could grant no more than a lien to secure fees and expenses. If it were to grant more, it would be illegal and illegal contracts are void. *See Paragon Oil Syndicate v. Rhoades Drilling Co.*, 277 S.W. 1036, 1037 (1925); *Hennessy v. Automobile Owners' Ins. Ass'n,* 282 S.W. 791, 792 (Tex. 1926).

In *C.I.R. v. Banks*, 543 U.S. 426, 437 (2005) the Supreme Court stated: "State laws vary with respect to the strength of an attorney's security interest in a contingent fee and the remedies available to an attorney should the client discharge or attempt to defraud the attorney. No state laws of which we are aware, however, even those that purport to give attorneys an "ownership" interest in their fees, convert the attorney from an agent to a partner."

### b. Lien

The relevant language of the contingent fee agreement is:

> 11. The client hereby grants the attorney a lien, and assigns an interest to the attorney, on this cause of action and a lien on any proceeds, rendered either directly and/or indirectly to client, regardless of the source of such payment, the nature of the settlement and/or judgment, and any judgments, settlements, payments recovered from any party, either directly and/or indirectly received as a result of this matter, incident, and/or event. This lien/assignment shall apply and be effective upon any monies which are rendered in connection with this cause of action, or any related matter, settlement, and/or monies received, as security for the payment of attorney fees, associated costs, and expenses, as herein outlined and defined, and as contracted for herein.

Trustee's Exhibit 1. The language of the agreement unambiguously states that client:
- grants the attorney a lien on this cause of action;
- assigns an interest to the attorney on this cause of action (treated as a lien as discussed above); and
- grants the attorney a lien on any proceeds.

Rule 1.08, *supra*, allows the parties to contract for a contingency fee, in this case 40% of the settlement. The statute further allows the parties to agree to a lien on the settlement to secure the contingency fee, and this appears to be what they have done.

The Trustee has not challenged the creation of a security lien under § 544 but has explicitly stated in his memorandum that he will evaluate the existence of a security lien once the funds are recovered. The Court does not rule on the status of Frankoff's lien at this time, but even if the funds may be subject to Frankoff's security lien, the funds are property of the estate under 11 U.S.C. § 541 and the transfers are avoidable under § 549.

4.     Interpreting the Agreement in Light of Performance by the Parties

Frankoff and Norman argue that Frankoff "owned" the proceeds of the settlement immediately upon payment by Merloni. That argument raises three very difficult issues in light of the way that the parties actually performed.

First, if Frankoff "owned" 40% of all proceeds immediately upon payment, then he "owned" 40% of the first $375,000 payment. Forty percent of $375,000 is $150,000. Under Frankoff's argument, when the first payment was deposited into Frankoff's trust account, $150,000 of it (under Frankoff's theory) belonged to him. But it is undisputed that the money was paid to other parties. Frankoff asserts that he "agreed" to take his fee out of the second payment. While this agreement would make sense if Frankoff's interest in the payment was a lien, it would not make sense if he "owned" 40% of each dollar paid in settlement. If Frankoff "owned" 40% of the first payment and "agreed" to let Debtor use it to pay Debtor's creditors, then Frankoff must have made a $150,000 "loan" to Debtor at the time of the first Merloni payment. If that is the case, then the post-bankruptcy payment to Frankoff was repayment of a loan, and is recoverable under § 549.

Second, if (as Frankoff argues) he "owned" 40% of funds when paid by Merloni, then he only "owned" 40% of the second payment. The second payment was $350,000, so Frankoff would have "owned" 40% of $350,000, or $140,000. What he (and Norman) got was $262,500. He received more from the second payment that he allegedly "owned".

Third, the amount to which Frankoff was entitled is apparently not clearly calculable by simple mathematics. The employment agreement does not clearly define how the 40% is computed. It does not indicate whether it includes non-monetary value (such as release of indebtedness and the value of "parts" delivered by Merloni, both of which were consideration provided by Merloni for the settlement. Frankoff and Vir agreed that there was a dispute about the amount of the legal fee; that is why the money was removed from Frankoff's client account and put into Riga's client account. Therefore, one could not possibly know pre-bankruptcy that Frankoff "owned" $262,500 of the $350,000 in Riga's account. At best, one would know that Frankoff claimed $140,000 of the $350,000. There is no indication of how Frankoff was to collect his fee from the release of indebtedness or from the delivery of "parts".

Therefore, at the moment that the bankruptcy petition was filed, the $350,000 in Riga's client account was simply a sum of money to which there were competing claims, and one of those competing claims was Debtor's claim. The money was held in escrow subject to Debtor's claims and subject to Frankoff's claims. In order to constitute property of the estate, the Debtor must merely have an interest in the funds.

Funds that are proceeds of Debtor's property (a lawsuit) are property of the estate even if subject to a claim (even a secured claim) by a nondebtor, especially if the amount of the claim by the nondebtor is disputed. *See Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985) (dispute over existence of lien did not strip bankruptcy court of jurisdiction because cause of action against insurance policy and any proceeds were property of the estate).

## V. EFFECT OF POST-PETITION TRANSFER

A. Violation of § 549.

The existence of a perfected pre-petition lien on the proceeds of the settlement would not be a defense to the trustee's avoidance power. *See*, *In re Saunders*, 155 B.R. 405 (Bankr. W. D. Tex. 1993) (citing *In re Fort Dodge Creamery Co.*, 121 B.R. 831, 836 (Bankr. N.D. Iowa 1990) ("that the post-petition payment might have been made from the proceeds of the liquidation of the transferee's collateral is not a defense to the trustee's avoidance power under § 549(a)"); In re Wilson, 52 B.R. 639, 641 (Bankr. E.D. Tenn. 1985) ("the fact that the post-petition payment was applied to a secured note does not prevent avoidability")).[7]

To the extent that a transfer is avoided under § 549, the trustee may recover the property transferred from the initial transferee or the entity for whose benefit the transfer was made or any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a). The transfers in question in this adversary proceeding are the payments, through two checks, one to Steven Frankoff and one to Susan Norman. Each is an initial transferee from whom the trustee may recover to the extent of the avoided transfer.

By separate order, Frankoff and Norman are ordered to pay the funds that they received to the trustee. The funds will be held by the trustee subject to any attorney's lien that Frankoff may have had under the contingency contract. That is, all lien rights are preserved.

B. Violation of § 362(a)(3) and (a)(6).

The Trustee alleges that Defendants' conduct was in violation of Bankruptcy Code § 362(a)(3) and (a)(6). A petition filed under § 301 operates as a stay of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate and any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

The Trustee has requested actual and punitive damages for Defendants' willful violation of the automatic stay. An individual injured by any willful violation of a stay may recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(k).[8] The imposition of such damages under § 362(k) is inapplicable here. Debtor is a corporation, not an individual. The Court may, however, award damages to a corporate debtor in enforcement of the court's civil contempt power. This court has the power, under 11 U.S.C. § 105 and Bankruptcy Rule 9020, to impose sanctions for contempt. *See In re All Trac Transp., Inc.*, 306 B.R. 859, 872 (Bankr. N.D. Tex. 2004). Accordingly, sanctions under § 362(k) are denied. But there is not adequate summary judgment evidence to

---

[7] *Saunders* also discusses the practicality of avoidance where the money recovered by the Trustee would be returned to the secured creditor. The Court finds the resolution of this issue is not required at this time due to the uncertainty of the status of the lien.

[8] Trustee asks for sanctions under § 362(h) which makes no provision for sanctions. Court assumes Trustee meant § 362(k) which is similar to sanctions of § 362(h) under the Bankruptcy Code prior to the 2005 amendments.

address sanctions under the Court's power of contempt. Summary judgment on that basis of relief is denied, but the issue of sanctions under the Court's power of contempt is reserved for trial.

## VI. CONCLUSION

By separate order issued this date, Defendants are ordered to pay to the trustee the amount of the avoided transfers, reserving the Defendant's lien rights and reserving the trustee's claim for damages for violation of § 362.

Frankoff agreed prior to the filing of this case that Debtor had sufficient interest in the funds to justify putting the money into an attorney's trust account. The money was transferred out of that trust account without authority of any document signed by Debtor and without even a pretense of authority from the bankruptcy court. The trustee is entitled to possession of the property of the estate under §§ 542 and 543, even property in the hands of a custodian or receiver, *see* Bankruptcy Code § 543. Riga's transfer of funds to Frankoff instead of to the trustee violated § 543. Therefore the Court will certify the order for Frankoff and Norman to pay $262,500 to the trustee as a final order, to place the parties in *status quo ante* and redress the violation of the Bankruptcy Code. The question of lien rights is reserved.

The Court will issue a scheduling order for decision of remaining issues.

SIGNED 02/20/2007.

*[Signature: Wesley W. Steen]*

WESLEY W STEEN
United States Bankruptcy Judge